**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------x
                              :
ANN BARNES                    :    Civ. No. 3:16CV01013(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL, ACTING    :    March 9, 2018
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :
                              :
------------------------------x

## <u>RULING ON CROSS MOTIONS</u>

Plaintiff Ann Barnes ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand. [Doc. #14]. Defendant has filed a cross-motion for an order affirming the decision of the Commissioner. [Doc. #15].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #15]** is **DENIED.** Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a

Hearing **[Doc. #14]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings.

I.  **PROCEDURAL HISTORY**

Plaintiff filed concurrent applications for DIB and SSI on June 14, 2013, alleging disability beginning May 1, 2012. See Certified Transcript of the Administrative Record, compiled on August 19, 2016, (hereinafter "Tr.") 212-26. Plaintiff's application was denied initially on September 11, 2013, see Tr. 127-35, and upon reconsideration on November 14, 2013. See Tr. 137-44.

On October 6, 2014, plaintiff, accompanied and represented by attorney Olia Ylener, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Lisa Groenveld-Meijer. See Tr. 36-82. Vocational Expert ("VE") Faith A. Johnson also appeared and testified by telephone at this hearing. See Tr. 73-81, 195-96. On November 5, 2014, the ALJ issued an unfavorable decision. See Tr. 15-35. On May 6, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's November 5, 2014, decision the final decision of the Commissioner. See Tr. 1-4. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff filed this timely action for review and now moves to reverse the Commissioner's decision or for remand. [Doc. #14]. On appeal, plaintiff asserts that:

1. The ALJ failed to properly weigh the opinion evidence;

2. The ALJ erred in evaluating plaintiff's pain;

3. The ALJ failed to properly determine plaintiff's Residual Functional Capacity ("RFC"); and

4. The ALJ erred at step five of the sequential evaluation.

See generally Doc. #14-1 at 12-20. As set forth below, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ erred in her consideration of plaintiff's intellectual disability.

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See

Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject

the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A)(alterations added); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).[1]

---

[1] Some of the Regulations cited in this decision were amended, effective March 27, 2017. Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per curiam</u>). If and only if the claimant does <u>not</u> have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

regulation in effect when ALJ adjudicated plaintiff's claim); <u>see also</u> <u>Alvarez v. Comm'r of Soc. Sec.</u>, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing <u>Lowry</u>, 474 F. App'x at 805 n.2)).

Id.

   "Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given [her] residual functional capacity." Gonzalez ex rel.
Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243
(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155
(Aug. 26, 2003)). The RFC is what a person is still capable of
doing despite limitations resulting from her physical and mental
impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).

   "In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that the Social Security Act is a remedial statute to be
broadly construed and liberally applied." Id. (internal
quotation marks omitted).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 31. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2012. See Tr. 21. At step two, the ALJ found that plaintiff had the severe impairments of: lower back pain/back disorder secondary to morbid obesity; phencyclidine dependence in remission; rule out bipolar disorder; and a mixed personality disorder with antisocial and organic features. See id. The ALJ also found that plaintiff suffered from the following non-severe impairments: migraine headaches; gastrointestinal reflux disease; eczema; gout; kidney stones; and vision defects. See Tr. 21-22. The ALJ found insufficient evidence in the record to support a diagnosis of an intellectual disability. See Tr. 21.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 22-23. The ALJ specifically considered Listings 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.08 (personality disorders). See id.

Before moving on to step four, the ALJ found plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b)
and 416.967(b) except she would be limited to simple,
routine, and repetitive work with short instructions and
training by demonstration; she can tolerate few changes
day-to-day. She can work in an environment that does not
include fast-paced production requirements, like timed
work or work with strict quotas; she can perform work
that does not require direct contact with the general
public or tandem tasks. In addition to regular breaks,
she may need to take additional brief breaks of
approximately five minutes per hour.

Tr. 23-24. At step four, the ALJ found plaintiff had no past

relevant work. See Tr. 29. At step five, after considering

plaintiff's age, education, work experience and RFC, the ALJ

found that jobs existed in significant numbers in the national

economy that plaintiff could perform. See Tr. 29-30.

## V.   DISCUSSION

Plaintiff asserts several arguments in support of reversal

or remand. For the reasons set forth below, the Court finds that

the ALJ's RFC determination is not supported by substantial

evidence and that the ALJ erred in her consideration of

plaintiff's intellectual disability.

### A. *RFC Determination*

Plaintiff contends that the ALJ failed to properly

determine her RFC because the ALJ did not adequately account for

plaintiff's obesity, physical impairments, social limitations,

and medication side effects. See Doc. #14-1 at 15-18. Defendant

responds that the ALJ's determination is supported by

substantial evidence of record. See Doc. #15-1 at 14-16.

10

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner ... an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record. ... Accordingly, an ALJ may not substitute h[er] own judgment for competent medical opinion." Walker v. Astrue, No. 1:08CV00828(RJA)(JJM), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (internal citations and quotation marks omitted) (quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)). In that regard,

> The record must have more than mere medical findings: [A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. §404.1567(a) ... [the Commissioner may not] make the connection himself."

Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)); see also Palascak v. Colvin, No. 1:11CV0592(MAT), 2014 WL 1920510, at *8 (W.D.N.Y. May 14, 2014) (ALJs "are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment." (collecting cases)). By

contrast, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]" Walker, 2010 WL 2629832, at *7 (quoting Manso-Pizarro v. Sec. of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)).

Here, the ALJ determined plaintiff could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 23.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§404.1567(b), 416.967(b). Social Security Ruling ("SSR") 83-10 further explains:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251 (S.S.A. 1983). The ALJ found plaintiff limited to light work "because of intermittent back pain and

obesity[,]" but determined "further erosion [of the occupational base] is not warranted by the lack of objective testing or documentation, the limited treatment methods, and the claimant's consistently mild to moderate findings on objective examination." Tr. 26. Supporting this conclusion, the ALJ relied on the opinions of State examiner Maria Lorenzo, M.D., concurring with Dr. Lorenzo's "lack of finding of disability or significant functional limitations[.]" Tr. 28; see also Tr. 98-109 (Disability Determination Explanations containing Dr. Lorenzo's opinions). The ALJ afforded Dr. Lorenzo's opinions "some weight." Tr. 28. The ALJ further assigned "some weight" to the opinion of consultative examiner Dr. Goccia, reasoning that "evidence submitted after [his August 2013 assessment] supports a finding that the claimant's physical impairments meet the minimal threshold for severity in combination with her other impairments." Id.; see also Tr. 274-77 (Dr. Goccia's Consultative Examination). Notably, neither the opinion of Dr. Goccia, nor the opinions of Dr. Lorenzo, provide any function-by-function assessment of plaintiff's physical capabilities.

The ALJ's physical RFC finding is not supported by substantial evidence. The ALJ found that plaintiff's physical impairments were relatively mild; substantial evidence of record does not support this determination, particularly considering

plaintiff's impairments in combination, including her obesity,
edema, and back pain.

> Our case law is plain that "the combined effect of a
> claimant's impairments must be considered in determining
> disability; the [Commissioner] must evaluate their
> combined impact on a claimant's ability to work,
> regardless of whether every impairment is severe." Dixon
> v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995)[.]

Burgin v. Astrue, 348 F. App'x 646, 647 (2d Cir. 2009).
Plaintiff's edema, for which she was medicated, is well-
documented throughout the record. See Tr. 371, 374-75, 376, 378,
424, 442. Although the ALJ acknowledged that in January and
March 2014, plaintiff presented with "some edema of the legs[,]"
Tr. 26, it does not appear that the ALJ considered the impact of
plaintiff's edema in combination with her other physical
impairments. Plaintiff testified about the edema's effect on her
functional abilities, and stated that she has problems with her
feet because they swell up from sitting, and that this makes
standing difficult. See Tr. 68. Plaintiff also testified that as
a result of her swollen feet, i.e., the edema, she cannot wear
closed shoes and wears clogs or shoes that slip-on. See Tr. 68-
69. Considering plaintiff's edema in combination with
plaintiff's obesity and back pain, the ALJ's conclusion that
plaintiff is capable of light work, which "requires being on
one's feet up to two-thirds of a workday ... [and] standing or
walking, off and on, for a total of approximately 6 hours of an

14

8-hour workday[,]" SSR 83-10, 1983 WL 31251, is not supported by substantial evidence. See SSR 02-1P, 2000 WL 34686281 (S.S.A. Sept. 12, 2002) ("The combined effects of obesity with other impairments may be greater than might be expected without obesity.").

Further, there is no medical source opinion supporting the ALJ's finding that plaintiff can perform light work. In that regard, the ALJ should have obtained a medical source statement from which to assess plaintiff's physical RFC. As noted above, plaintiff's physical impairments, particularly when considered in combination, are not such that the ALJ could render a common sense assessment concerning her physical capabilities. Additionally, there is not sufficient medical evidence of record from which the ALJ may draw a reasonable conclusion. The ALJ acknowledged as much in her decision. See Tr. 25 ("As a threshold matter the undersigned notes that the claimant has very limited treatment history for her allegedly disabling physical pain, with very limited records over the more than two years under review." (emphasis added)).[2] Where "the record contains

_____

[2] In making her determination, the ALJ relied on plaintiff's "limited treatment history." See, e.g., Tr. 25, 26. However, the ALJ did not consider any explanation for plaintiff's limited treatment history contained in the record, including: plaintiff's homelessness, see Tr. 47; lack of insurance, see Tr. 288, 333; and borderline intellectual functioning, see Tr. 307-26. "[A]n ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment 'without first

15

sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (quotation marks and citations omitted); see also Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where ... the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."). Here, however, there are limited treatment records from which to assess plaintiff's physical functional capacity. Accordingly, the ALJ should have obtained a medical source statement from plaintiff's treating physician[3] or a current consultative examination[4] which provided a function-by-function assessment of plaintiff's physical abilities.

---

considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.'" Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (quoting SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996)); see also Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009). Here, it does not appear that the ALJ adequately considered information in the record that might explain plaintiff's "limited treatment history."

[3] Plaintiff testified that she has a "new" "main doctor" at the Bridgeport Hospital clinic. See Tr. 52.

[4] The ALJ discounted the findings of Consultative Examiner Dr. Goccia because of evidence submitted after his examination. See Tr. 28. This suggests that the ALJ should have obtained an

The ALJ's RFC determination as to plaintiff's social functioning also is not supported by substantial evidence. The ALJ found that plaintiff "can perform work that does not require direct contact with the general public or tandem tasks." Tr. 24. In support of this finding, the ALJ did not rely on any specific medical opinion. The ALJ did consider the opinion of Dr. Liane Pioli, but the ALJ afforded "lesser weight" to the portion of Dr. Pioli's opinion addressing plaintiff's social deficits because it "fail[ed] to provide a statement of the maximum the claimant could do in spite of her alleged impairments[.]" Tr. 28-29. This leaves no medical opinion regarding plaintiff's social functioning on which the ALJ placed any significant weight. It thus appears that the ALJ improperly relied on her lay opinion in assessing plaintiff's social limitations.

Additionally, although the ALJ limited plaintiff from interacting with the public and from tandem tasks, the RFC finding does not otherwise account for plaintiff's general interaction with coworkers. The record contains substantial evidence which suggests that plaintiff's interaction with coworkers should be generally limited. See, e.g., Tr. 62-63, 65-66 (plaintiff's testimony that she had previously been fired from a job for arguing with co-workers and had a history of

---

updated consultative examination of plaintiff's physical capabilities.

arguing with her housemates); Tr. 310 (plaintiff's reported felony conviction for assault); Tr. 309-11, 324-26 (Dr. Pioli's assessment of plaintiff's social functioning). The ALJ's RFC finding is particularly troublesome in light of Dr. Pioli's conclusion that "it is important to see how [plaintiff] gets along with co-workers and takes supervision without becoming defensive." Tr. 326. Thus, the Court finds that the ALJ's RFC determination as to plaintiff's social functioning is not supported by substantial evidence.

Further, it was not permissible for the ALJ to render a common sense assessment about plaintiff's social functioning, particularly in light of her finding that plaintiff suffers from the severe impairment of "mixed personality disorder with antisocial organic features." Tr. 21. In that regard, the ALJ should have obtained a function-by-function assessment of plaintiff's social abilities from Dr. Pioli or a consultative examiner. Accordingly, remand is appropriate for further development of the record concerning plaintiff's social abilities.

**B.** ***Consideration of Plaintiff's Intellectual Disability***

Although not specifically raised by plaintiff, the Court finds that the ALJ erred in her consideration of plaintiff's intellectual disability.

It is undisputed that plaintiff has a full-scale IQ of 67. See Tr. 307. Although the ALJ considered plaintiff's claimed intellectual disability at step two, she specifically considered this condition only in relation to Listing 12.05(C).[5] See Tr. 21. The ALJ found:

> [N]othing in the record establishes a baseline of functioning prior to age 22, which is required to meet listing 12.05. As such, there is insufficient support for a diagnosis of intellectual disability. The claimant's specific noted deficits upon examination, however, were considered in the residual functional capacity below.

Tr. 21. The ALJ's decision disregards the law in this Circuit assuming, "in the absence of evidence indicating otherwise, that claimants will experience a 'fairly constant IQ throughout their lives.'" Talavera, 697 F.3d at 152 (quoting Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001)). The Second Circuit has recognized that "'there are many possible reasons why an adult would not have obtained an IQ test early in life,' so requiring a contemporaneous qualifying test score would present intractable problems of proof in many cases of legitimate

_____

[5] "Under SSA regulations, a petitioner suffers from [intellectual disability] if she exhibits: Significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Talavera, 697 F.3d at 151-52 (2d Cir. 2012) (internal quotation marks omitted) (quoting Listing 12.05).

intellectual disability." Id. (quoting Luckey v. U.S. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989)).

Although there is evidence of plaintiff's "long history of PCP dependence[,]" Tr. 309, there is also circumstantial evidence suggesting that plaintiff had deficits in adaptive functioning prior to the age of 22, which were independent of her PCP dependence. "Courts have found circumstantial evidence such as a claimant attending special education classes, dropping out of school before graduation, or exhibiting difficulties in reading, writing or math sufficient to infer the claimant had deficits in adaptive functioning prior to age 22 sufficient to meet the requirement of §12.05." Mitchell v. Colvin, No. 14CV00418(MAT)(LGF), 2016 WL 8674509, at *8 (W.D.N.Y. June 10, 2016) (collecting cases), report and recommendation adopted, 2016 WL 6775300 (Nov. 15, 2016). Here, plaintiff attended special education classes and dropped out of school in the eighth or ninth grade. See Tr. 242, 309-310. Dr. Pioli's testing found that plaintiff's "ability to express her ideas in writing was in the low end of the Borderline range and very weak (below the 2nd grade level)[,]" and that plaintiff is "'functionally illiterate' in both Reading and Writing." Tr. 321, 323; see also Tr. 49, 72 (plaintiff's testimony about her difficulties with reading and writing). Dr. Pioli also noted that although "[i]t is probable that [plaintiff's] long-term PCP

use has caused at least some lowering of her cognitive function[, plaintiff's] scores on this evaluation suggest that any premorbid level of functioning was most likely in the Low Average range at best." Tr. 322. In conclusion, Dr. Pioli found that plaintiff's "skills ranged from Intellectually Disabled to Low Average. Her functioning is fairly consistent, but may be lowered slightly due to her drug abuse." Tr. 325 (emphasis added). This suggests that plaintiff's level of intellectual functioning was significantly impaired prior to the onset of her PCP dependence. Thus, circumstantial evidence supports an inference that plaintiff suffered from an intellectual disability prior to age 22. See, e.g., Mitchell, 2016 WL 8674509, at *8 ("In this case, Plaintiff, quit high school after ninth grade ..., had been enrolled in special education classes while attending school ..., was evaluated with reading at a second grade level ..., and exhibited serious difficulties in writing and arithmetic. ... Accordingly, substantial evidence that Plaintiff exhibited significantly sub-average general intellectual functioning manifested before Plaintiff turned 22 years old[.]"); see also Labarge v. Colvin, 7:15CV0732(GTS), 2016 WL 5408160, at *8-9 (N.D.N.Y. Sept. 26, 2016). Accordingly, the Court finds remand appropriate to determine whether plaintiff's intellectual disability "manifested during [her] developmental period" or is the consequence of her PCP

dependence after the age of 22. <u>Brown v. Sec'y of Health & Human Servs.</u>, 948 F.2d 268, 271 (6th Cir. 1991) (Remand was appropriate to determine whether claimant's intellectual disability "manifested during claimant's developmental period or rather is a partial consequence of claimant's history of heavy alcohol use after the age of twenty-two.").

In light of the above findings, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner shall address the other claims of error not discussed herein.

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #15]** is **DENIED.** Plaintiff's Motion for Order reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #14]** is **GRANTED**, to the extent plaintiff seeks a remand for an administrative hearing.

**The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to for further administrative proceedings consistent with this Ruling.**

SO ORDERED at New Haven, Connecticut, this 9th day of March, 2018.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE